```
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

DELEY GAZINELLI,

     PLAINTIFF                          08 Civ 4483/GEL/JCF
     vs                                 COMPLAINT [JURY TRIAL]

THE CITY OF NEW YORK, a
municipal entity, NEW YORK
CITY POLICE OFFICERS,
"JOHN DOES" and DETECTIVE
"JOE" TAYLOR, Shield #
3649, all of the identified
and non identified persons
in their individual and in
their official capacities,

     DEFENDANTS
_____
```

## I. INTRODUCTION

1.   This litigation arises out of the Plaintiff's unlawful custodial arrest and detention on March 11 and March 12, 2008, the preferral of charges against him, and the issuance of a Desk Appearance Ticket associated therewith.

2.   This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

3.   The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

## II. JURISDICTION

4.   Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in

conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

5. The facts which give rise to the State law claims have a common nucleus with the facts which describe the federal law claims. The federal and the pendent State law claims arise out of the same transaction.

6. The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

7. This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States and, as well, as guaranteed under the laws and Constitution of the State of New York.

### III. THE PARTIES

8. The Plaintiff is a resident of the State of New York, the City of New York, and the County of New York.

9. The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is authorized with, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

10. Defendants "John Does" and "Joe" Taylor, Shield # 3649, are New York City Police Officers and agents and employees of the City of New York. Although their actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and of the State of New York, they were taken in and during the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance

of their duties and functions as New York City Police Officers and agents and employees of the City of New York.

## IV. ALLEGATIONS

11. This litigation arises out of the Plaintiff's unlawful custodial arrest and detention on March 11 and March 12, 2008, the preferral of charges against him, and the issuance of a Desk Appearance Ticket associated therewith.

12. The Plaintiff is forty seven years of age.

13. The Plaintiff's birth date is July 1, 1960.

14. The Plaintiff was born in Brazil, South America.

15. The Plaintiff came to the United States in 1981.

16. The Plaintiff became an American citizen in 1995.

17. The Plaintiff is single.

18. The Plaintiff resides at 330 West 15th Street, Apt. # 5D, New York City, New York.

19. The Plaintiff has resided at his present address for approximately twenty one [21] years.

20. The Plaintiff attended Columbia University where he received his undergraduate degree.

21. Plaintiff attended graduate school at New York University.

22. The Plaintiff holds masters degrees in art history and arts administration.

23. The Plaintiff has met all of the requirements for his PhD except for his dissertation.

24. The Plaintiff's dissertation topic is: "Minimalism-The U.S.A. Classical Art Movement".

25. The Plaintiff lectures extensively in the United States and abroad on the arts.

26. The Plaintiff was a National Endowment for the Arts fellow.

27. The Plaintiff has coordinated panels of art experts for the National Endowment for the Arts International Program which selects artists to represent The United States in international showings, programs, and exhibitions of American art which is displayed in American embassies around the world.

28. The Plaintiff worked at the world famous Whitney Museum of Art during the tenure of its former illustrious director Thomas Armstrong.

29. The Plaintiff has worked as a director of contemporary art in numerous New York City art galleries.

30. For the last approximately ten years the Plaintiff has taught periodically as an adjunct professor at New York University.

31. The Plaintiff is present an art advisor and consultant to private individuals, corporations, and art galleries.

32. The Plaintiff is a member of the American Association of Museums and a board member of the Chelsea Cultural Partnership.

33. The Plaintiff is a founding member of the Gay and Lesbian Anti-Violence Project and he is a member of other community based groups.

34. The Plaintiff is a "public member" of the Housing, Health, and Human Services Committee of Manhattan Community Board # 4.

35. The Plaintiff is an active member of the Council of Chelsea Blocks Associations.

36. Most recently, the Plaintiff was elected as a member of the County Committee of the New York County from the Election District in which the Plaintiff resides.

37. The Plaintiff is the founder and Executive Director of Chelsea Sculpture Park, a not for profit organization which was conceived in concert with the Hudson

River Park's master plan and design and which will in the near future be New York City's first museum without walls that will display rotating exhibitions of fine art created by international masters of the 20th and 21st centuries.

38.  On March 11, 2008 ay or about 11:00 P.M., Defendant New York City Police Department Detective Taylor from the 10th Precinct in Manhattan knocked at the Plaintiff's residence and door and said that an individual, who supposedly had just moved into the building, had stated that a dark skin, Latino individual with tattoos and a red jacket who resided in the Plaintiff's apartment, attacked him in the lobby of the building.

39.  Defendant Taylor informed the Plaintiff that the alleged incident had occurred between 2:00 A.M. and 3:00 A.M. on a Thursday or Friday approximately two weeks prior thereto.

40.  Defendant Taylor asked the Plaintiff if he lived with anyone.

41.  The Plaintiff responded in the negative because such was the case: the Plaintiff did not reside with anyone and no one was staying with the Plaintiff and had not in that time frame or for some time prior thereto stayed at the Plaintiff's residence.

42.  The Plaintiff further informed Defendant Taylor that he—the Plaintiff, did not have any tattoos and that he did not have and never owned or possessed a red jacket.

43.  The Plaintiff further informed Defendant Taylor that the last time he had been in a "fight" was when he was a child.

44.  Defendant Taylor than asked the Plaintiff for a description of the various neighbors on his floor and the Plaintiff accommodated such and provided descriptions of his neighbors.

45.  The Plaintiff further informed Defendant Taylor that he—the Plaintiff, had just had surgery on February 20, 2008 and that he—the Plaintiff, had serious health issues which would have prevented the Plaintiff from engaging in any kind of physical encounters with anyone.

46. The Plaintiff also informed Defendant Taylor that he was a community leader –as he is, that he was a founder of his block association, an elected member of the New York County Democratic Committee, and that he-the Plaintiff, had been working for the last twenty one [21] years with the 10th Precinct.

47. The Plaintiff informed Defendant Taylor that approximately two years prior to that time, he—the Plaintiff, had, on behalf of the block association, given a medal to Sergeant Olsmestead, the retired community affairs officer at the 10th Precinct, in gratitude for his services to the community.

48. The Plaintiff further informed Defendant Taylor that he—the Plaintiff, had been a frequent guest of the 10th Precinct at its annual dinners where both police officers and community leaders were honored.

49. Defendant Taylor stated that he did not know about any of that and he simply wanted to know about the alleged assault.

50. The Plaintiff asked Defendant Taylor if he had spoken with any of the Plaintiff's neighbors and/or the super of the building whose apartment was on the lobby level.

51. Defendant Taylor stated that he had done so.

52. At that time, the Plaintiff informed the Defendant that the only thing of which he was aware that had taken place in the building, approximately two weeks prior thereto, was that someone was, very late at night, buzzing the intercom of every single apartment in the building and refusing to identify himself.

53. The Plaintiff informed Defendant Taylor that, when such occurred, he—the Plaintiff, had called 911 and that he—the Plaintiff, had been informed on the next day thereafter that the Plaintiff's neighbors had also called 911 and that one resident had gone down to the lobby and found a white male, who appeared high on drugs, claiming that he lived in the building.

54. The Plaintiff informed Defendant Taylor that he never saw the individual and that he assumed that it was a

prank from someone who was drunk and who had been at a club in the neighborhood.

55. Defendant Taylor informed the Plaintiff that he was taking him to the Precinct to "clear things up".

56. The Plaintiff did not think that he had any choice about such but rather that he was being compelled to accompany Defendant Taylor.

57. When the Plaintiff arrived at the 10th Precinct, a police officer, who was at the desk, recognized the Plaintiff from meetings which the Plaintiff had attended as part of the 10th Precinct Community Council.

58. The police officer at the desk greeted the Plaintiff.

59. The Plaintiff accompanied Defendant Taylor to a windowless third floor room.

60. At some point thereafter, Defendant Taylor informed the Plaintiff that the information that the Plaintiff had provided Defendant Taylor about his—the Plaintiff's, community background and involvement with the 10th Precinct was accurate.

61. Moreover, Defendant Taylor indicated to the Plaintiff that an officer had said to Defendant Taylor that he—Defendant Taylor, "had the wrong man".

62. Defendant Taylor indicated that he was not going to take a statement from the Plaintiff but that the Plaintiff had to wait for him—Defendant Taylor, to hear from downtown and for him—Defendant Taylor, to determine if the Plaintiff's record was "clear".

63. Defendant Taylor also informed the Plaintiff that the accuser had identified the Plaintiff.

64. The Plaintiff had absolutely no idea what Defendant Taylor was talking about since the Plaintiff had not been engaged in any kind of assault at any time; the Plaintiff did not have tattoos; the Plaintiff did not have a red jacket; and there was no one whatsoever residing or staying in the Plaintiff's residence.

65. At some point, Defendant Taylor closed the door and the Plaintiff asked him to leave it open since there was no air in the room.

66. Defendant Taylor indicated that he could not do so because the Plaintiff was under arrest.

67. Defendant Taylor indicated that, if he did not want to sit in the closed room, then Defendant Taylor would place him in a holding cell.

68. Defendant Taylor indicated to the Plaintiff at some point that he would have to fingerprint the Plaintiff and photograph him and that such was required to take place on the first floor.

69. Because the Plaintiff was being moved, Defendant Taylor indicated to the Plaintiff that he had to handcuff the Plaintiff and he did so and took the Plaintiff to the first floor where the Plaintiff was fingerprinted and photographed.

70. At or about 2:00 A.M., the Plaintiff was released from the Precinct and given a Desk Appearance Ticket.

71. The Desk Appearance Ticket stated that the Plaintiff was being charged with assault in the third degree and that the Plaintiff was required to appear in Court on April 14, 2008.

72. Thereafter, Plaintiff called Stephen Hughes, the Commanding Officer of the 10th Precinct whom the Plaintiff knew.

73. Commanding Officer Hughes stated to the Plaintiff that he could not speak with him for legal reasons.

74. The Plaintiff indicated to Commanding Officer Hughes that he felt that, because there was absolutely no factual basis whatsoever to justify his arrest, he—the Plaintiff, felt he had been targeted because he was the only Latino person residing in his building.

75. The Plaintiff asked Commanding officer Hughes when this incident supposedly took place and Commanding Officer Hughes informed the Plaintiff that he understood that the

alleged incident supposedly took place on February 29, 2008 and that the Plaintiff should retain an attorney.

76. The Plaintiff also informed Commanding Officer Hughes that Defendant Taylor had informed the Plaintiff that there was going to be an Order of Protection issued against the Plaintiff and the Plaintiff and that the Plaintiff should not speak with anyone in the building.

77. The Plaintiff informed Commanding Officer Hughes that, because he had no idea who it was that he was being accused of supposedly assaulting, he was concerned because, in the context of the Order of Protection, he could not then speak with anyone in the building.

78. Plaintiff further informed Commanding Officer Hughes that he—the Plaintiff, had spoken with the super and with his neighbors and he had been informed that, notwithstanding that he had asked Defendant Taylor to speak with them to confirm his—the Plaintiff's accounting, Defendant Taylor had not done so apparently electing to take the unfounded assertions of a someone whom the Plaintiff believed was a white drug or alcohol intoxicated white male who had engaged in totally inappropriate conduct, over that of a well respected, longstanding community leader which Commanding Officer Hughes knew the Plaintiff to be.

79. The Plaintiff appeared in Court on April 14, 2008 and the Plaintiff was advised, not surprisingly to the Plaintiff, that the New York County District Attorney's Office was declining to prosecute.

80. Defendant Taylor was reckless and deliberately indifferent to the rights, security and liberty of the Plaintiff and consciously avoided reasonable further inquiry, without compromising law enforcement functions or placing any one at risk, which would have made it absolutely clear, if it already was not clear to Defendant Taylor as it should have been on its face, that there was no probable cause basis for detention and the arrest of the Plaintiff and the preferral of charges against the Plaintiff, the latter of which the New York County District Attorney's Office did not even bother to prosecute and specifically declined to do so.

81. While the actions and conduct of the New York City Police Officer were unlawful, those actions and conduct were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as a New York City Police Officer and as an agent and as an employee of the City of New York.

82. There was no probable cause for the custodial arrest of the Plaintiff or for the selective and discriminatory preferral of charge against the Plaintiff or for the prosecution of the Plaintiff.

83. Defendant Taylor intentionally, recklessly and with deliberate indifference consciously ignored the manifest exculpatory evidence and/or deliberately and intentionally and with reckless and deliberate indifference to the right of the Plaintiff to be secure in his liberty elected not to take further reasonable investigatory steps which, if taken, would not have caused risk to the law enforcement mission, but rather would have promoted the just and reasonable enforcement of the law enforcement mission, and would not have, if taken, posed or increased a risk to any individual or individuals.

84. Defendant Taylor's conscious, intentional, and reckless and deliberately indifferent actions and conduct propelled the probable cause lacking custodial arrest of the Plaintiff and the malicious preferral of unfounded, totally evidence lacking charges against the Plaintiff, the latter of which was manifest by the fact that the New York County District Attorney's Office declined to prosecute the Plaintiff.

85. The actions and conduct herein described were propelled by the crime offense enforcement initiatives of the City of New York which is grounded in the philosophy of the "ends justifies the means" including but not limited to racial and national origin profiling that propels New York City Police Officers to make unlawful and otherwise unjustified arrests and detentions of individuals simply because of the race of the individual and/or of because of the actual or perceived national origin of the individual; and/or causes law enforcement officers to take short cuts and intentionally, deliberately, and with conscious indifference to the rights of innocent individuals avoid undertaking reasonable investigatory steps, without posing a risk to an individual, which, if taken, would make it

abundantly clear, even if it was without such already abundantly clear, that there was no probable cause basis for the arrest and detention and preferral of charges against the individual who was eventually arrested and subjected to unfounded charges.

86. Such crime offense enforcement initiative propels officers to make stops, detentions, and custodial arrests where there is no probable cause for any arrest and, by such, to generate arrest statistics and to otherwise make examples of individuals in the hope that such would depress crime offenses.

87. The policy and practices have a disproportionate impact on African Americans and persons of color and/or on persons of actual or perceived national origin such as individuals of Hispanic national origin who, because of their race and/or color and/or actual or perceived national origin, are, disproportionately and for no other reason but the race and/or color and/or actual or perceived national origin factor, singled out for unlawful, probable cause lacking arrests and otherwise discriminatory and derogatory treatment, based on those considerations and the bias associated therewith.

88. The Plaintiff was discriminatorily and falsely arrested and subjected to racial and/or color and/or national origin discriminatory conduct.

89. The actions, conduct, policies and practices and customs herein described violated the Plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

90. The actions, conduct, policies and practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including unlawful stop and detention, false arrest and imprisonment, assault and battery [by way of the Plaintiff's handcuffing],and discrimination.

91. The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

92. The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and physical pain and suffering [by the nature of his handcuffing].

93. The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

94. The Plaintiff's counsel is: James I. Meyerson, Esq., 64 Fulton Street @ Suite # 502, New York, New York 10038 [212] 226-3310 and [212 513-1006 [FAX], jimeyerson@yahoo.com.

95. The Plaintiff has no other viable remedy at law but for the institution of this litigation in order to secure full and complete redress, vindication, and justice.

## V. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION

96. The Plaintiff reiterates Paragraph #'s 1 through 95 and incorporates such by reference herein.

97. The Plaintiff was unlawfully stopped and detained and subsequently discriminatorily and selectively falsely arrested and falsely imprisoned and detained in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

98. The Plaintiff suffered injuries and damages.

### B. SECOND CAUSE OF ACTION

99. The Plaintiff reiterates Paragraph #'s 1 through 98 and incorporates such by reference herein.

100. The Plaintiff was unlawfully stopped and detained and subsequently discriminatorily and selectively falsely arrested and falsely imprisoned and excessively detained in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

101. The Plaintiff suffered injuries and damages.

### C.   THIRD CAUSE OF ACTION

102. The Plaintiff reiterates Paragraph #'s 1 through 101 and incorporates such by reference herein.

103. The Plaintiff was subjected to racial, color, and/or perceived and/or actual national origin discriminatory treatment in violation of his rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

104. The Plaintiff suffered injuries and damages.

### D. FOURTH CAUSE OF ACTION

105. The Plaintiff reiterates Paragraph #'s 1 through 104 and incorporates such by reference herein.

106. The Plaintiff was subjected to racial and color and/or perceived or actual national origin discriminatory treatment in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

107. The Plaintiff suffered injuries and damages.

### E.   FIFTH CAUSE OF ACTION

108. The Plaintiff reiterates Paragraph #'s 1 through 96 and incorporates such by reference herein.

109. The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

110. The Plaintiff suffered injuries and damages.

### F. SIXTH CAUSE OF ACTION

111. The Plaintiff reiterates Paragraph #'s 1 through 110 and incorporates such by reference herein.

112. The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiff's rights under the laws and Constitution of the State of New York.

113. The Plaintiff suffered injuries and damages.

### G. SEVENTH CAUSE OF ACTION

114. The Plaintiff reiterates Paragraph #'s 1 through 113 and incorporates such by reference herein.

115. Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of <u>respondeat</u> <u>superior</u>.

116. The Plaintiff suffered injuries and damages.

### H. EIGHTH CAUSE OF ACTION

117. The Plaintiff reiterates Paragraph #'s 1 through 116 and incorporates such by reference herein.

118. The Plaintiff was subjected to excessive, unnecessary and unreasonable force in the form of his handcuffing in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

119. The Plaintiff suffered injuries and damages.

### I. NINTH CAUSE OF ACTION

120. The Plaintiff reiterates Paragraph #'s 1 through 119 and incorporates such by reference herein.

121. The Plaintiff was subjected to an assault and battery by the way of his physically being taken into

14

custody and by his handcuffing in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

    122.   The Plaintiff suffered injuries and damages.

### J.   TENTH CAUSE OF ACTION

    123.   The Plaintiff reiterates Paragraph #'s 1 through 122 and incorporates such by reference herein.

    124.   The Defendant City of New York, if the City represents its Officers, uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

    125.   The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City Police Officers and, in their capacities as such, as agents and employees of the City of New York.

    126.   Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

    127.   The Plaintiff is entitled to recover against the City of New York for the conduct of its named and unnamed Officers <u>under the federal claim jurisdiction</u> pursuant to the doctrine of <u>respondeat</u> <u>superior</u>.

    128.   The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

> [a] Invoke pendent party and pendent claim jurisdiction.
>
> [b] Award appropriate compensatory and punitive damages.
>
> [c] Award appropriate declaratory and injunctive relief.
>
> [d] Empanel a jury.
>
> [e] Award attorney's fees and costs.
>
> [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
       May 12, 2008

>                                    Respectfully submitted,
>
>                                    /s/ James I. Meyerson_____
>                                    JAMES I. MEYERSON [JM 4304]
>                                    64 Fulton Street @ Suite # 502
>                                    New York, New York 10013
>                                    [212] 226-3310
>                                    [212] 513-1006/FAX
>                                    jimeyerson@yahoo.com
>
>                                    ATTORNEY FOR PLAINTIFF
>                                    BY:_____